DOROTHEA PALMATEER, Plaintiff, *v.* HAROLD F. PALMATEER, Defendant.

Supreme Court, Special Term, Albany County, January 10, 1949.

*Arthur C. Ward* and *Thomas A. Allen* for plaintiff.

No appearance for defendant.

BOOKSTEIN, J. The parties to this action were married on July 17, 1937, and separated August 14, 1947. There are two children of the marriage, born respectively November 5, 1938, and July 29, 1941. Plaintiff wife asserts that the reason for the separation was that defendant assaulted her and the children on the day of their separation and that the parties " had a misunderstanding, and it ended in an argument." The reason assigned by plaintiff for leaving defendant doubtless justified the separation and might sustain an action for a separation.

Plaintiff, however, brings this action for an annulment on the ground of alleged fraudulent representations. It may be noted that the reason asserted by plaintiff for leaving her husband is not the discovery of any fraud in any alleged representations made prior to the marriage but rather the alleged assault already referred to.

The first alleged fraudulent representation is that the defendant " wanted to get married, establish a home and raise children ". The defendant did marry plaintiff; he established a home and two children have been born. There is no evidence of any fraud in these alleged representations.

The only other fraudulent representations alleged are that defendant's " reputation in the community was good " and " that he had never been in any trouble ".

So far as defendant's reputation being good is concerned, no evidence was introduced to the contrary and hence no fraud has been established as to the alleged representation as to a good reputation.

As to the alleged representation that the defendant " had never been in any trouble ", such alleged reputation is quite vague and general. Its precise meaning is not apparent.

The evidence on that subject is as follows:

" Q. Now did you learn anything about his past prior to your separation? A. Yes, I did.

" Q. Did you learn from his father that he had been in trouble? A. Yes, I did.

"Q. He had been arrested? A. Yes.

"Q. And had been mixed up in some smuggling business? A. That is right.

"Q. Did you also learn from your aunt that he had been discharged from his job for stealing? A. Yes, I did."

Plaintiff testified that after obtaining such information as the foregoing questions and answers indicated, she took it up with defendant and he said it was true and that when she asked him why he didn't tell her these things before she married him he replied that he was afraid she would not marry him, if she knew those things about him. From this only one might infer that the incidents referred to occurred prior to marriage.

Assuming all of those matters to be true, plaintiff never left defendant on account of them. Obviously she voluntarily continued to cohabit with defendant, after discovery of the alleged frauds, in which event an annulment is barred. (Civ. Prac. Act, § 1139.)

Moreover, the evidence is absolute hearsay, by way of alleged statements made to plaintiff by her own aunt and by defendant's father, and as such in and of themselves constitute no competent evidence whatsoever, upon which to annul a marriage.

However, it would seem that plaintiff regards this fundamental weakness to be overcome by the alleged admission to her by defendant of the truth of such hearsay statements. This view overlooks the fact that an annulment cannot be granted on the alleged admission of a spouse (Civ. Prac. Act, § 1143). Beyond that there is no other satisfactory evidence, without which an annulment cannot be granted (Civ. Prac. Act, § 1143).

Even if these defects were overlooked, or deemed not to exist, plaintiff is not entitled to an annulment, on such proof as has been here presented.

What trouble did defendant's father tell plaintiff that defendant had been in? Was it financial or physical or mental? Many persons of good reputation find themselves in trouble, which in no way reflects on their character or reputation. For what had defendant been arrested and when and with what result? Mere arrest is not evidence of bad character or reputation. Innocent people have had to submit to arrest. It must be assumed from the absence of proof on the subject that defend-

ant was not convicted as a result of the arrest. What is meant by the information allegedly imparted to plaintiff that defendant was " mixed up " in some smuggling business? Such a statement, at most, can mean some connection with smuggling, which reflects on defendant's character and reputation. For aught that appears, he was " mixed up " innocently. The alleged naked statement to plaintiff by her aunt, that defendant " had been discharged from his job for stealing " furnishes no basis for the annulment sought. For aught that appears, he may never have been guilty of stealing from his employer, even if defendant had been discharged for such alleged cause. When did the incident occur, before or after marriage? If after, it certainly has no relation to the alleged representations.

To grant an annulment on the evidence presented in this case, would be nothing short of giving judicial sanction and approval to the proposition that the sacred marriage contract is a worthless scrap of paper. This court declines to give such judicial sanction and approval. The institution of marriage cannot hang on so slender a thread.

The application for a decree of annulment is denied and the complaint is dismissed upon the merits.

Submit decision and judgment accordingly.